Khalial Withen
Kevin Dougherty
Alaska District Council of Laborers
2501 Commercial Drive
Anchorage, AK 99501
Ph: (907.) 276-1640
Fax: (907.) 274-7289
kwithen@alaskalaborers.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 341, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 3:19-cv-00221-TMB |
| MAIN BUILDING MAINTENANCE, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFF LOCAL 341'S OPPOSITION TO DEFENDANT MAIN BUILDING MAINTENANCE, INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.     Introduction................................................................................3

II.    Background .................................................................................3

III.   Argument....................................................................................7

    A. Legal Standard for the Motion to Dismiss .................................7

    B. Jurisdiction Is Proper Under Section 301 of the Labor Management
       Relations Act.....................................................................8

    C. The Union's Grievance Is Subject to Mandatory Arbitration Under the
       Terms of  the Collective Bargaining Agreement.........................13

    D. Given that the Union's Grievance Was Fundamentally Based on
       Contractual  Violations, the Now-Rescinded Executive Order 13495 Does
       Not Bar Arbitration of These Contractual Violations....................16

IV.    Conclusion ...............................................................................20

ALASKA DISTRICT COUNCIL OF LABORERS
2501 Commercial Drive
Anchorage, Alaska 99501
(907) 276-1640

LOCAL 341'S OPPOSITION TO MBM'S MOTION TO DISMISS
*Laborers' Int'l Union of North America, Local 341 v. Main Building Maintenance, Inc.*
Case No.: 3:19-cv-00221-TMB
Page 2 of 21

# I. Introduction

Laborers' International Union of North America, Local 341 ("Local 341" or "Union") files this Opposition to the Motion to Dismiss submitted by Defendant Main Building Maintenance, Inc. ("MBM" or "Employer"). Because jurisdiction is proper under section 301 of the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 185, and because the claim to compel arbitration is based on the express terms of the parties' collective bargaining agreement, Local 341 asks this Court to deny MBM's Motion to Dismiss. Any exhaustion requirements under the now-rescinded Executive Order 13495 (Nondisplacement of Qualified Workers Under Service Contracts) do not apply to the contractual claims in the Union's grievance that arise from specific provisions of the parties' collective bargaining agreement and are subject to the mandatory grievance and arbitration provision. Regardless, any such theoretical exhaustion requirements under the now-rescinded Executive Order 13495 are moot.

# II. Background

The factual background is more fully set forth in Local 341's Complaint. *See* Dkt. 1 ¶¶ 7-32. In short, MBM and Local 341 are parties to a collective bargaining agreement that contains a broad mandatory grievance and arbitration provision providing that "all disputes, complaints or grievances, in connection with the

LOCAL 341'S OPPOSITION TO MBM'S MOTION TO DISMISS
*Laborers' Int'l Union of North America, Local 341 v. Main Building Maintenance, Inc.*
Case No.: 3:19-cv-00221-TMB
Page 3 of 21

ALASKA DISTRICT COUNCIL OF LABORERS
2501 Commercial Drive
Anchorage, Alaska 99501
(907) 276-1640

interpretation or application of the terms of this Agreement" must be resolved according to the binding procedure in Article IX of the Agreement. *See* Dkt. 1, Ex. 1, p.8. The final step in the mandatory procedure is arbitration. *Id.*

On April 1, 2019, MBM began performance on a contract involving housekeeping services on Joint Base Elmendorf-Richardson in Anchorage, Alaska. *See* Dkt. 1 ¶ 13. Simaika Tagaloa, a Local 341 member, had been employed by predecessor contractors on the housekeeping project for approximately 14 years and was the sole Union Steward for the bargaining unit of employees. *See id*; Ex. 2. Tagaloa reported that he was terminated for eating breakfast during a meeting after reporting to work on the first day of MBM's performance. *See* Dkt. 1, Ex. A, p.2; Dkt. 5, Ex. A, p.3. Based on MBM's unjustified decision that Tagaloa's employment would not be continued, the Union initiated the mandatory grievance process under the Agreement. *See* Dkt. 1, Ex. 2.

During the grievance process, the Union asserted multiple contractual violations including Article VI, section 4 (union representation); Article VIII (progressive discipline and just cause); Article X, section 1 (seniority); Article XV (show up and

ALASKA DISTRICT COUNCIL OF LABORERS
2501 Commercial Drive
Anchorage, Alaska 99501
(907) 276-1640

LOCAL 341'S OPPOSITION TO MBM'S MOTION TO DISMISS
*Laborers' Int'l Union of North America, Local 341 v. Main Building Maintenance, Inc.*
Case No.: 3:19-cv-00221-TMB
Page 4 of 21

Case 3:19-cv-00221-TMB   Document 11   Filed 12/05/19   Page 4 of 21

reporting time); Article XXVI, sections 2 and 3 (hiring of employees); and Article XXXII (invalidity provision).[1] *See* Dkt. 1, Ex. 2; *see also* Dkt. 1, Ex. 6, p.4.

In the grievance, the Union argued that MBM had violated the Agreement by failing to consider seniority in its decision not to continue Tagaloa's employment—given Tagaloa's more than 14 years of work on this government project—in violation of Article XXVI, section 3, which governs seniority during transitions from predecessor to successor contractors on military contracts. Dkt. Ex. 2; *see also* Dkt. 1, Ex. 6, p.4. Given MBM's decision not to continue the employment of Tagaloa, the single union steward on the project while hiring numerous less experienced employees, Union further asserted that MBM had violated Article XXVI, section 2, which prohibits discrimination based on union activity. Dkt. 1 ¶ 25.

After participating in the grievance process and offering substantive responses until the arbitration stage, MBM then repeatedly refused to participate in arbitration. *See* Dkt. 1, Ex. 3, p. 2-5, Ex. 5, p.1, Ex. 9. The Union then filed its Complaint to Compel Arbitration of the contractual violations asserted in the grievance. *See* Dkt. 1.

---

[1]     *See also* Article XXVIII, section 6: "The Union recognizes that all operations of the employer are subject to the rules and regulations of the United States Government and U.S. Military Installations." Dkt. 1, Ex. 1, p. 17; *see* Dkt. 1, Ex. 7 p. 1 (citing this provision on federal law governing military installations).

LOCAL 341'S OPPOSITION TO MBM'S MOTION TO DISMISS
*Laborers' Int'l Union of North America, Local 341 v. Main Building Maintenance, Inc.*
Case No.: 3:19-cv-00221-TMB
Page 5 of 21

ALASKA DISTRICT COUNCIL OF LABORERS
2501 Commercial Drive
Anchorage, Alaska 99501
(907) 276-1640

## Tagaloa's Complaint with the Alaska State Commission for Human Rights

On May 16, 2019, Tagaloa, acting as an individual, filed a complaint with the Alaska State Commission for Human Rights alleging race discrimination under AS 18.80.220. *See* Dkt. 5, Ex. A, p. 3. MBM misstates that "Plaintiff filed a complaint with the Alaska State Commission for Human Rights alleging discrimination" even though the Union Plaintiff in this case did not file such a complaint with the Commission. *See* Dkt. 5 ¶ 7; Dkt. 5, Ex. A. Even if the Commission's finding, that Tagaloa was never offered employment by MBM, was to be read in the light most favorable to Defendant—which it should not be—that factual finding would not determine the outcome of the claim to compel arbitration given that the Union's grievance relied on the provision of the Agreement on "HIRING OF EMPLOYEES" among other provisions. The Commission's investigation also demonstrates a factual dispute for an arbitrator to resolve: Tagaloa reported that his employment was terminated while he was "on the clock" while MBM reports he was not initially hired. *See* Dkt. 5, Ex. B, p.2. The Commission found that Tagaloa's individual complaint of race discrimination was not supported by substantial evidence. *Id.*

## U.S. Department of Labor Complaint

After refusing to arbitrate, MBM asserted that the Union was required to file a complaint with the U.S. Department of Labor under Executive Order 13495. *See* Dkt. 1,

ALASKA DISTRICT COUNCIL OF LABORERS
2501 Commercial Drive
Anchorage, Alaska 99501
(907) 276-1640

LOCAL 341'S OPPOSITION TO MBM'S MOTION TO DISMISS
*Laborers' Int'l Union of North America, Local 341 v. Main Building Maintenance, Inc.*
Case No.: 3:19-cv-00221-TMB
Page 6 of 21

Ex. 5; *see also* 74 F.R. 6103, Exec. Order No. 13495 (2009). In response to MBM's assertion and stonewalling of the arbitration process, the Union filed a complaint to toll the statute of limitations, expressly notifying MBM that it did so without "waiv[ing] its position that the issues in the grievance are clearly subject to arbitration under the collective bargaining agreement." *See* Dkt. Ex. 8.

Defendant filed its Motion to Dismiss on November 14, 2019.[2]

## III. Argument

### A. Legal Standard for the Motion to Dismiss

MBM moves to dismiss Local 341's claim against it pursuant to Federal Rule of Procedure 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion can challenge the sufficiency of the pleadings to establish jurisdiction (facial attack), or a lack of any factual support for subject matter jurisdiction despite the pleading's sufficiency (factual attack). For a facial attack, " ' the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.' " *Jensen v. Locke*, 2009 U.S. Dist. LEXIS 139772, *6 (Nov. 9, 2009) (quoting *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). For a factual attack, evidence outside the pleadings necessary to resolve factual disputes as to

ALASKA DISTRICT COUNCIL OF LABORERS
2501 Commercial Drive
Anchorage, Alaska 99501
(907) 276-1640

---

[2]   On Nov. 4, Plaintiff filed the proof of service.

LOCAL 341'S OPPOSITION TO MBM'S MOTION TO DISMISS
*Laborers' Int'l Union of North America, Local 341 v. Main Building Maintenance, Inc.*
Case No.: 3:19-cv-00221-TMB
Page 7 of 21

jurisdiction may be considered. *See Assoc. of Am. Med. Coll. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). For the reasons addressed below, Local 341 will easily meet this burden.

In deciding a Rule 12(b)(6) motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *See Kurka v. Probst*, 2015 U.S. Dist. LEXIS 11748, *4 (D. Alaska Feb. 2, 2015) (quoting *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030) (9th Cir. 2008)). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). All reasonable inferences must be drawn in favor of the nonmoving party. *See Holden v. Hagopian*, 978 F.2d 1115, 1118 (9th Cir. 1992). A court should not consider "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

**B.    Jurisdiction Is Proper Under Section 301 of the Labor Management Relations Act.**

This is a garden-variety labor-management dispute over the enforcement of an arbitration provision of a collective bargaining agreement, and this dispute is expressly

ALASKA DISTRICT COUNCIL OF LABORERS
2501 Commercial Drive
Anchorage, Alaska 99501
(907) 276-1640

covered by section 301 of the Labor-Management Relations Act. Section 301(a) of the Labor-Management Relations Act provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Moreover, jurisdiction in this case is also consistent with the legislative history of the Act: "Congress sought in Section 301 to add stability to labor relations by providing a means to enforce agreements between unions and employers" and by promoting "industrial peace." THE DEVELOPING LABOR LAW 17-7 (John E. Higgins, Jr., ed., 7th ed. 2017). This section of the Act "gives federal courts jurisdiction to enforce collective bargaining agreements, and in particular to enforce agreements to arbitrate labor disputes." *See O'Hara v. Dist. No. 1-PCD, MEBA*, 56 F.3d 1514, 1519 (D.C. Cir. 1995) (internal citations omitted). Local 341 easily meets the jurisdictional standard set forth in Section 301: (1) MBM is an employer; (2) Local 341 is a labor organization representing employees in an industry affecting commerce; and (3) this is a suit based on a violation of a contract between those two organizations. *See* Dkt. 1 ¶¶ 1, 3-6, 9-10, 20; *see also* Dkt. 1, Exs. 1-2 (collective bargaining agreement between parties and grievance with multiple contractual claims).

LOCAL 341'S OPPOSITION TO MBM'S MOTION TO DISMISS
*Laborers' Int'l Union of North America, Local 341 v. Main Building Maintenance, Inc.*
Case No.: 3:19-cv-00221-TMB
Page 9 of 21

Despite the fact that the Union's claim is based on multiple asserted violations of a contract between a labor organization and an employer, MBM argues that "Section 185 confers jurisdiction for disputes involving employees, and Tagaloa was never an employee of MBM." Dkt. 5 ¶ 2. But MBM's argument invents a completely new requirement for section 301 jurisdiction and is inconsistent with courts' application of this section. Federal courts have repeatedly exercised jurisdiction under section 301 in disputes between unions and employers that involve non-employee union members, including in disputes involving hiring decisions. *See e.g.*, *E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 702 (7th Cir. 2005) (jurisdiction under section 301 of the LMRA in suit involving dispute over hiring practices); *Int'l Union of Operating Eng'rs, Local Union No. 12 v. Sim J. Harris Co.*, 1992 U.S. Dist. LEXIS 20658, *3-4 (C.D. Cal. Sept. 30, 1992) (section 301 jurisdiction to compel arbitration of union's grievance challenging employer's hiring and dispatch practices); *Laborers' Int'l Union v. Foster Wheeler Corp.*, 1985 U.S. Dist. LEXIS 13024 (D.N.J. Dec. 9, 1985) (in claim arising under section 301, the parties were required to arbitrate whether prehire agreement's scope of work provision compelled employer to hire certain workers on construction project).

To challenge section 301 jurisdiction, MBM points to *McClellan v. Skytech Enterprises, Ltd.*, but *McClellan* undercuts MBM's own arguments about section 301 of

ALASKA DISTRICT COUNCIL OF LABORERS
2501 Commercial Drive
Anchorage, Alaska 99501
(907) 276-1640

LOCAL 341'S OPPOSITION TO MBM'S MOTION TO DISMISS
*Laborers' Int'l Union of North America, Local 341 v. Main Building Maintenance, Inc.*
Case No.: 3:19-cv-00221-TMB
Page 10 of 21

the LMRA. *See McClellan v. 1 Skytech Enters.*, No. CIV-12-202, 2012 U.S. Dist. LEXIS 108495, *3 (E.D. Ok. Aug. 3, 2012). The plaintiff in that case was an individual worker, John McClellan, who brought two causes of action: breach of implied contract and violation of public policy. MBM ignores two pivotal differences between *McClellan* and the matter before the Court. First, in *McClellan*, the named plaintiff was the individual employee, asserting jurisdiction under section 301, while the plaintiff in this case is the labor organization Local 341. *Id.* at *1. Second, the dispute in *McClellan* did not involve a grievance or a specific provision of the collective bargaining agreement. *Id.* at *3. The Court in *McClellan* concluded the worker had not stated a claim for violation of section 301 of the LMRA because he had "made no allegations with regard to his exhaustion of any grievance or arbitration remedies provided in the collective bargaining agreement, any breach of duty by the labor union, or any causal connection between an alleged breach by the labor union and the integrity of the arbitration process." *Id.* (internal citations omitted). By contrast, Local 341 raised multiple contractual violations in the grievance process. *See* Dkt. 1, Ex. 2, Ex. 6, p. 4. *McLellan v. Skytech* is therefore inapposite and does not change the fact that this case falls squarely in the Court's jurisdiction under section 301.

While MBM places great emphasis on its argument concerning the now-rescinded Executive Order 13495, it fails to acknowledge that the contractual provisions

cited by the Union actually provide separate protections related to hiring and termination decisions. *See generally* Dkt. 5, p. 5-8. For instance, the prohibition on discrimination based on union activity in the hiring-of-employees provision of the Agreement is distinct from any Executive Order protections. *Compare* Dkt. 1, Ex. 1, p. 16 *with* 74 F.R. 6103, Exec. Order No. 13495 (2009). In addition, the seniority in the hiring of employees is similarly distinct from any Executive Order protections. The Union further argued during the grievance process that MBM had violated other provisions of the Agreement that address union representation and the designation of union stewards, progressive discipline and just cause, and show up and reporting time. *See* Dkt. 1, Ex. 6, p.4. These contractual violations are based on provisions of the Agreement that are not related to any executive order. Based on the Union's grievance filings and the facts it relied upon, the Union has more than demonstrated that there is a dispute "in connection with the interpretation or application of the terms of this Agreement" subject to the mandatory arbitration provision. *See* Dkt. 1, Ex. 1, p. 8. As a result, there is in fact a dispute under section 301 of the LMRA involving a violation of a contract between an employer and a labor organization. Jurisdiction is therefore proper under section 301 of the LMRA.

ALASKA DISTRICT COUNCIL OF LABORERS
2501 Commercial Drive
Anchorage, Alaska 99501
(907) 276-1640

LOCAL 341'S OPPOSITION TO MBM'S MOTION TO DISMISS
*Laborers' Int'l Union of North America, Local 341 v. Main Building Maintenance, Inc.*
Case No.: 3:19-cv-00221-TMB
Page 12 of 21

## C. The Union's Grievance Is Subject to Mandatory Arbitration Under the Terms of the Collective Bargaining Agreement.

The law governing the arbitration of disputes under a collective bargaining agreement is well-established. The role of the court in such cases is limited to the question whether the collective bargaining agreement requires that the subject matter of the grievance be submitted to arbitration. Federal labor policy favors arbitration of disputes between unions and employers: "There is a strong presumption that a collective bargaining agreement containing a customary arbitration clause provides for arbitration of the dispute at issue." *UFCW, Locals 197 & 373 v. Alpha Beta Co.*, 736 F.2d 1371, 1374 (9th Cir. 1984) (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) (emphasis added; footnote omitted)). This presumption can only be overcome if " 'it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Id.* (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) (emphasis added)). Therefore, "doubts should be resolved in favor of coverage." *Id.* (internal quotation marks and citations omitted).

In Article IX, the Agreement provides for the arbitration of "all disputes, complaints or grievances, in connection with the interpretation or application of the terms of this Agreement." *See* Dkt. 1, Ex. 1, p. 8. The agreement further provides "If

ALASKA DISTRICT COUNCIL OF LABORERS
2501 Commercial Drive
Anchorage, Alaska 99501
(907) 276-1640

LOCAL 341'S OPPOSITION TO MBM'S MOTION TO DISMISS
*Laborers' Int'l Union of North America, Local 341 v. Main Building Maintenance, Inc.*
Case No.: 3:19-cv-00221-TMB
Page 13 of 21

Case 3:19-cv-00221-TMB   Document 11   Filed 12/05/19   Page 13 of 21

no satisfactory settlement is arrived at by these parties within ten (10) working days, either party may . . . refer the matter to Step Three, Arbitration." *Id.*

In the grievance process, the Union pointed to a series of contractual violations, including but not limited to the following: Article VI, section 4 (union representation); Article VIII (progressive discipline and just cause); Article X, section 1 (seniority); Article XV (show up and reporting time); Article XXVI, sections 2 and 3 (hiring of employees); and Article XXVIII, section 6 ("The Union recognizes that all operations of the employer are subject to the rules and regulations of the United States Government and U.S. Military Installations."). *See* Dkt. 1, Ex. 2, Ex. 6, p.4; Dkt. 1, Ex. 7, p. 1. In particular, the Union based its grievance on Article XXVI titled "HIRING OF EMPLOYEES." *See* Dkt. 1, Ex. 1, p. 16; *see also* Dkt. 1, Ex. 7, p. 1 (citing Article XXVIII, section 6 on the application of federal law to employer operations on military installations). Article XXVI, section 2 establishes a non-discrimination provision based on union activity: "Selection of applicants for referral to or for employment on jobs, shall be on a non-discriminatory basis and shall not be based on, or in any way affected by Union membership, bylaws, rules, regulations, constitutional provisions or any other obligation or aspect of Union membership, policies or requirements." *See id.* Within the same hiring-of-employees article, section 3 specifically addresses the common situation that occurs when the government awards a new service contract to a successor

ALASKA DISTRICT COUNCIL OF LABORERS
2501 Commercial Drive
Anchorage, Alaska 99501
(907) 276-1640

LOCAL 341'S OPPOSITION TO MBM'S MOTION TO DISMISS
*Laborers' Int'l Union of North America, Local 341 v. Main Building Maintenance, Inc.*
Case No.: 3:19-cv-00221-TMB
Page 14 of 21

contractor and the Union already represents employees with the predecessor contractor.

Article XXVI, section 3, provides:

> When the Employer is awarded a new service contract in a location where the Laborers' International Union already represents employees through a prior collective bargaining agreement with the predecessor contractor, the Employer signatory to this Agreement agrees to retain the necessary number of employees of the predecessor contractor required for Service Contract performance, Article X, Seniority, shall be applicable in the above.

This hiring provision in the successor-employer context therefore requires application of the contract provision on seniority, which states in part that "The Employer recognizes seniority . . . as an important factor to be considered by it." *See* Dkt. 1, Ex. 1, p. 8. In its grievance, the Union argued that MBM had failed to "[d]emonstrate just cause for omitting seniority in Article X – section 1 and Article XXVI – Section 3." *See* Dkt. 1, Ex. 2.

While MBM argues that, under Executive Order 13495, "Tagaloa's grievance is subject to the jurisdiction of the United States Department of Labor's Wage and Hour Division," the collective bargaining agreement actually provides rights and protections above and beyond any rights under an executive order. *See generally* Dkt. 1, Ex. 1.

Not only do the hiring-of-employees and seniority provisions cover this dispute, the Union raised several other issues during the grievance process that are expressly covered by the parties' collective bargaining agreement: Article VI, section 4 (arguing

LOCAL 341'S OPPOSITION TO MBM'S MOTION TO DISMISS
*Laborers' Int'l Union of North America, Local 341 v. Main Building Maintenance, Inc.*
Case No.: 3:19-cv-00221-TMB
Page 15 of 21

MGM's actions violated the contractual requirements for changing the employment status of a union steward); Article VIII (arguing Tagaloa was improperly disciplined without progressive discipline or just cause); Article XV (arguing Tagaloa was entitled to show up and reporting pay for the time worked before being sent home). *See* Dkt. 1, Ex. 2; Dkt. 5, Ex. A, p.3. To the extent MBM states "the CBA only applies to employees of MBM, and Tagaloa was never an employee of MBM," in light of the strong presumption in favor of arbitration, the scope and interpretation of the Agreement is for an arbitrator to decide. Even though MBM disputed these contractual violations during the grievance process, resolution of these contractual and related factual issues is for an arbitrator.

**D.** **Given that the Union's Grievance Was Fundamentally Based on Contractual Violations, the Now-Rescinded Executive Order 13495 Does Not Bar Arbitration of These Contractual Violations.**

MBM's executive order arguments border on the absurd. According to MBM, the now-rescinded Executive Order 13495 should wipe clean any and all contractual violations related to Tagaloa's employment. But a union may maintain an action under section 301 of the LMRA to compel arbitration even if separate, related claims exist under other sources of law. MBM's mootness argument also undermines its claim that a rescinded Executive Order can conveniently eliminate independent contractual claims.

It is well-established that a union may maintain an action in federal court under section 301 of the LMRA to compel arbitration of a dispute even though an alternative remedy may be available or even if it is related to claims under other sources of law. *See Carey v. Westinghouse Electric Corp.*, 375 U.S. 261 (1964). A claim that is *itself* based on Executive Order 13495 may require administrative exhaustion, but unions are not required to exhaust administrative remedies with the United States Department of Labor on other claims—even related ones. In a hiring process covered by Executive Order 13495, an employer may still violate other legal standards for hiring. For instance, *Adams & Assocs. v. NLRB* involved a contractor covered by Executive Order 13495 and the National Labor Relations Board's order holding the contractor liable for unfair labor practices under the National Labor Relations Act, 29 U.S.C. § 151, et seq., in the hiring process. 871 F.3d 358 (5th Cir. 2017); *Rd. Sprinkler Fitters Union Local 699 v. Grinnell Fire Prot. Sys. Co.*, 1997 U.S. Dist. LEXIS 1543 (E.D. Pa. 1997) (National Labor Relations Board ruling on employee's unfair labor practice charge does not collaterally estop employee from proceeding to arbitrate dispute pursuant to terms of a collective bargaining agreement and the effect of the Board proceeding is for the arbitrator to determine).

Here, the seniority, discipline, and union steward protections in the Agreement are separate and independent sources of claims. Dkt. 1, Ex. 1, p. 5-9, 16. These

ALASKA DISTRICT COUNCIL OF LABORERS
2501 Commercial Drive
Anchorage, Alaska 99501
(907) 276-1640

LOCAL 341'S OPPOSITION TO MBM'S MOTION TO DISMISS
*Laborers' Int'l Union of North America, Local 341 v. Main Building Maintenance, Inc.*
Case No.: 3:19-cv-00221-TMB
Page 17 of 21

contractual protections are separate and distinct from any previous rights in the Executive Order. While MBM may dispute the merits of these contractual claims, the merits of such contractual claims are for an arbitrator to decide. *See UFCW, Locals 197 & 373 v. Alpha Beta Co.*, 736 F.2d 1371, 1375-76 (9th Cir. 1984) (concluding, in light of strong presumption in favor of arbitration, that employer's argument that transferred employees are no longer in the bargaining unit and are not covered by contractual protections was "frivolous at best").

In addition, "parties may expressly direct that the case be decided consistent with applicable law." HOW ARBITRATION WORKS 488 (Alan Miles Ruben, ed. 6th ed. 2003) (footnote omitted). For instance, it is appropriate to base an arbitration award on outside law when the agreement itself empowered arbitrator to resolve a dispute according to the law. *See Dorado Beach Hotel Corp. v. Union de Trabajadores de la Industria Gastronomica Local 610*, 959 F.2d 2 (1st Cir. 1992); *see also* HOW ARBITRATION WORKS 488 (Alan Miles Ruben, ed. 6th ed. 2003) (citing *Alaska Dep't of Admin.*, 96 Lab. Arb. 937 (Robinson, 1991) (arbitrator had authority to resolve dispute on compensation for employees' overtime work when the collective bargaining agreement provided that the public policy standards in the Fair Labor Standards Act would be the criteria for determining overtime eligibility)).

ALASKA DISTRICT COUNCIL OF LABORERS
2501 Commercial Drive
Anchorage, Alaska 99501
(907) 276-1640

In this case, the Union relied on the provision of the Agreement that recognized that "all operations of the employer are subject to the rules and regulations of the United States Government and U.S. Military Installations." *See* Dkt. 1, Ex. 7, p. 1 (citing Article XXVIII, section 6 of Dkt. 1, Ex. 1, p. 17). Although Executive Order 13495 is now rescinded, it was appropriate for the Union to maintain a contractual grievance even when there were potentially related federal laws that applied to the Employer's operations.

Again, MBM misguidedly relies on *McClellan v. 1 Skytech Enterprises*. *See* No. CIV-12-202, 2012 U.S. Dist. LEXIS 108495, *3, 2012 WL 3156861 (Aug. 3, 2012). But *McClellan* is entirely inapposite given that the individual plaintiff—not a union— did not raise a contractual dispute through the grievance process in that case. MBM cites no authority to support its premise that an Executive Order would somehow wipe out contractual claims.

Even if Executive Order 13495 had required administrative exhaustion of separate, contractual claims—which it did not—the October 31, 2019, rescission eliminates any such exhaustion requirements. In addition, any exhaustion requirement has been rendered both impossible and moot by the rescission. *See* Dkt. 5, Ex. E (Executive Order 13897 revoking Executive Order 13495, explaining that Secretary of

ALASKA DISTRICT COUNCIL OF LABORERS
2501 Commercial Drive
Anchorage, Alaska 99501
(907) 276-1640

LOCAL 341'S OPPOSITION TO MBM'S MOTION TO DISMISS
*Laborers' Int'l Union of North America, Local 341 v. Main Building Maintenance, Inc.*
Case No.: 3:19-cv-00221-TMB
Page 19 of 21

Labor shall "terminate, effective immediately, any investigations or compliance actions based on Executive Order 13495.").

## IV.     Conclusion

For the reasons stated above, Local 341 respectfully requests that the Court deny MBM's motion to dismiss.

DATED December 5, 2019.

Alaska District Council of Laborers

By: /s/ Khalial Withen
Khalial Withen
Alaska Bar No. 1311092
Kevin Dougherty
Alaska Bar No. 8111086
2501 Commercial Drive
Anchorage, AK  99501
Ph:  (907) 276-1640
Fax:  (907) 274-7289
kwithen@alaskalaborers.com

**ALASKA DISTRICT COUNCIL OF LABORERS**
2501 Commercial Drive
Anchorage, Alaska 99501
(907) 276-1640

LOCAL 341'S OPPOSITION TO MBM'S MOTION TO DISMISS
*Laborers' Int'l Union of North America, Local 341 v. Main Building Maintenance, Inc.*
Case No.: 3:19-cv-00221-TMB
Page 20 of 21

**CERTIFICATE OF SERVICE:**

This is to certify that a true and
correct copy of the foregoing was
served by electronic mail
this 5 December 2019, to:

Rebecca A. Lindemanm
Richmond & Quinn
360 K Street, Suite 200
Anchorage, AK 99501
Email: rlindemann@richmondquinn.com

Caroline Newman Small
Jay Hulings
Davis & Santos, P.C.
719 S. Flores Street
San Antonio, Texas 78204
Email: csmall@dslawpc.com
Email: jhulings@dslawpc.com

/s/ Khalial Withen
Alaska District Council of Laborers

**ALASKA DISTRICT COUNCIL OF LABORERS**
2501 Commercial Drive
Anchorage, Alaska 99501
(907) 276-1640

LOCAL 341'S OPPOSITION TO MBM'S MOTION TO DISMISS
*Laborers' Int'l Union of North America, Local 341 v. Main Building Maintenance, Inc.*
Case No.: 3:19-cv-00221-TMB
Page 21 of 21